IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:10-CV-101-RJC-DCK

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | ORDER |
| ACE AMERICAN INSURANCE COMPANY, ) COMPASS HOLDINGS, INC. and ) CROTHALL SERVICES GROUP, ) ) | |
| Defendants. ) ) | |

**THIS MATTER IS BEFORE THE COURT** on "Defendant ACE American Insurance Company's Motion To Transfer Venue" (Document No. 19). This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b), and the motion is ripe for disposition. Having carefully considered the arguments, the record, and the applicable authority, the undersigned will grant the motion to transfer.

**I. BACKGROUND**

Plaintiff Zurich American Insurance Company ("Plaintiff" or "Zurich") filed its "Declaratory Judgment Complaint" (Document No. 1) ("Complaint") in this action on March 5, 2010. Plaintiff describes the nature of the action as

> a civil action for declaratory relief to determine the respective rights and duties of the parties arising out of an insurance coverage dispute concerning a commercial general liability insurance policy and an underlying civil action entitled, <u>Rosie Mae Weathersby v. Johnson Diversity, Inc., Unisource Worldwide, Inc., Procter and Gamble Distributing, LLC, and Crothall Services Group</u>, United States District Court of the Central District of California, Case No. 2:08 CV 01196 (the "Underlying Action").

(Document No. 1, p.1).

On April 5, 2010, Defendant ACE American Insurance Company ("ACE") filed its "Answer And Counterclaim..." (Document No. 9). ACE's response, *inter alia*, alleged that venue is proper in the Central District of California and stated that it "will be seeking a transfer of venue." (Document No. 9, pp. 7-8). ACE's counterclaim seeks relief including indemnification, contribution and declaratory judgment. Id. at pp.7-10. Defendants Compass Holdings, Inc. ("Compass") and Crothall Services Group ("Crothall") (together, "Compass Defendants") filed their "Answer To Declaratory Judgment Complaint" (Document No. 15) on June 7, 2010. The Compass Defendants admit that Crothall is a subsidiary of Compass and that Compass's principal place of business is in Charlotte, North Carolina. (Document No. 15, p.2).

The Underlying Action involved a tort action originally brought in California state court on or about December 11, 2007, and later removed to the U.S. District Court for the Central District of California. (Document Nos. 1-1; 1-2). In that Underlying Action, Plaintiff Rosie Mae Weathersby ("Weathersby") alleged that she sustained injuries during the course of her work from September 11, 2005 through August 2006, at Cedars-Sinai Medical Center in Los Angeles, California. (Document No. 1-2, p.3). The District Court in California issued an "Order Dismissing Civil Action By Virtue Of Settlement" on March 5, 2010. (Case No. 2:08-cv-01196-AHM-RC; Document No. 210).

The March 2010 settlement in the Underlying Action did not include any payment from Zurich. (Document No. 24, p.5). According to Zurich, "Crothall agreed to pay Weathersby $3,900,000, with ACE contributing $2,593,735 of the settlement sum," and ACE now seeks $1,000,000 from Zurich as reimbursement for its payment. (Document No. 24, p.5-6). Zurich had issued a commercial general liability insurance policy (the "Policy") under which Compass was the

named insured and Crothall, among others, was also listed as a named insured for the policy period of September 30, 2004 to September 30, 2005. (Document No. 24, p.2-3). "ACE is an excess insurer for Compass and Crothall for the policy period subsequent to the period of the Zurich Policy." Id.

Plaintiff in this action "seeks a judicial determination of the respective rights, duties and obligations of Zurich American, ACE, Compass and Crothall under the law and the . . . Policy with respect to the Underlying Action." (Document No. 1, p.11). Specifically, Plaintiff contends that the Policy was not triggered because the bodily injuries of Weathersby and resulting damages first took place after the expiration of the Policy. Id. Plaintiff further seeks a ruling that its obligations, if any, would be paid following payment of Compass's self-insured retention and that Compass and Crothall breached the notice obligations of the Policy. Id.

On July 29, 2010, ACE filed the previously forecast "...Motion To Transfer Venue"(Document No. 19). Zurich filed its "Response in Opposition" (Document No. 23) on August 23, 2010; and ACE filed its Reply (Document No. 27) on September 10, 2010. The Compass Defendants have not filed a response to the pending motion and the time to do so has lapsed. The motion to transfer venue is now ripe for disposition.

## II. DISCUSSION

Defendant ACE moves to transfer this action to the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1404(a). (Document No. 19). According to § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court

may transfer any civil action to any other district or division where it might have been brought."[1]

The Supreme Court has opined that this provision

> is intended to place discretion in the district court to adjudicate motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness." Van Dusen v. Barrack, 376 U.S. 612, 622, 84 S.Ct. 805, 812, 11 L.Ed.2d 945 (1964). A motion to transfer under § 1404(a) thus calls on the district court to weigh in the balance a number of case-specific factors.

Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988).

This Court, as well as other U.S. District Courts, in applying Stewart have considered eleven factors in the analysis of whether to transfer a case to another venue. These factors include:

    1. The plaintiff's initial choice of forum;

    2. The residence of the parties;

    3. The relative ease of access of proof;

    4. The availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses;

    5. The possibility of a view;

    6. The enforceability of a judgment, if obtained;

    7. The relative advantages and obstacles to a fair trial;

    8. Other practical problems that make a trial easy, expeditious, and inexpensive;

    9. The administrative difficulties of court congestion;

    10. The interest in having localized controversies settled at home and the appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the action; and

---

[1] The parties do not dispute that this action might have brought in the Central District of California.

11. The avoidance of unnecessary problems with conflict of laws.

Giammattei v. Bertram Yacht, Inc., 3:09-CV-RLV, 2010 WL 2593612 at *2-3 (W.D.N.C. June 23, 2010)(citing Scholl v. Sagon RV Supercenter, LLC, 249 F.R.D. 230, 239 (W.D.N.C. 2008) and McDevitt & Street Co. v. Fide. and Deposit Co., 737 F.Supp. 351, 354 (W.D.N.C. 1990)); see also, St. Paul Fire & Marine Ins.Co. v. Renne Acquisitions Corp., 3:09cv511-RJC-DCK, 2010 WL 2465543 at *3 (W.D.N.C. June 14, 2010).  "Because of the plaintiff's initial right to choose the forum, a court should refrain from transferring an action if the transfer merely would shift the inconvenience from one party to another." Commercial Equip. Co. v. Barclay Furniture Co., 738 F.Supp. 974, 976 (W.D.N.C. 1990).  The analysis of the factors listed above is qualitative, not merely quantitative.  Id.  The Court will discuss the factors in turn.

**1. Plaintiff's Choice of Forum**

> In this district, it is well settled that where the plaintiff has chosen the forum where he resides, transfer to another venue should be allowed only "where the interests of justice weigh heavily in favor of transfer to another district." Nutrition & Fitness, Inc., 264 F.Supp.2d at 362. Where transferring venue would do little more than shift the balance of inconvenience from one party to another, the plaintiff's choice of forum is determinative.

Poarch v. American General Financial Services, Inc., 3:06CV412-RJC, 2007 WL 274807 at *4 (W.D.N.C. January 25, 2007)(citations omitted). "While the plaintiff's choice of forum is accorded substantial weight, the deference given to the plaintiff's choice is proportionate to the relation between the forum and the cause of action." Parham v. Weave Corp., 323 F.Supp.2d 670, 674 (M.D.N.C. 2004)(citations omitted).

Here, Plaintiff has *not* chosen the forum where it resides; Zurich is a New York corporation with its principal place of business in Illinois. (Document No. 1, p.2).  This lessens the burden on the Defendant.  Zurich contends, however, that this forum "has the strongest relationship to the

parties and the dispute." (Document No. 24, p.9).  Based on the totality of the circumstances, as discussed below, the undersigned is not convinced that this forum has the strongest relationship to the parties and the dispute.  The Plaintiff's choice of forum in this instance is accorded diminished weight.

2. **Residence of the Parties**

"All parties are corporations and deemed to reside in their state of incorporation and where their principal place of business is located." (Document No. 24, p.11).  As noted above, Plaintiff is a New York Corporation with its principal place of business in Illinois.  Id.  Defendant ACE is a Pennsylvania corporation with its principal place of business in Pennsylvania.  (Document No. 9, p.7).  Defendant Compass is a Delaware corporation with a principal place of business in Charlotte, North Carolina.  (Document No. 15, p.2).  Defendant Crothall is a Pennsylvania corporation, and it is unclear whether its principal place of business is North Carolina, Pennsylvania, or elsewhere. Id., see also, (Document No. 24, p.11).

In sum, residency appears to be a mixed factor.  Two parties – Plaintiff and ACE – are not North Carolina corporations and do not have their principal place of business in North Carolina.  Defendant Compass does have its principal place of business in North Carolina, and another – Crothall – is less clear.  The Court must consider that while residency in North Carolina exists clearly as to only one party, none of the parties are residents of California.  Thus, this factor favors a denial of transfer, but only marginally.

3. **Relative Ease of Access to Proof**

According to Plaintiff's Complaint, this action involves a determination of rights and duties arising out of an underlying civil action filed in California by a resident of California and related to events occurring in Los Angeles, California.  (Document No. 1).  Plaintiff concedes that "[a] key

6

witness in this case is Ms. Weathersby," the Plaintiff in the Underlying Action, but a non-party to this lawsuit. (Document No. 24, p.12).

It is undisputed that a central issue in the instant litigation is the "trigger issue" regarding when Weathersby sustained her injuries. (Document No. 1, pp.6-7). Plaintiff seems to contend that Weathersby and other important witnesses have already been deposed in the Underlying Action, and Plaintiff would require little, if any, additional testimony. (Document No. 24, pp.12-13). Plaintiff suggests additional depositions would likely occur in North Carolina, Illinois, and perhaps Pennsylvania. Id. at 16. Plaintiff argues that the primary issue here is one of contract interpretation, and thus does not bind this action to California, and concludes that "[o]n balance, some evidence is in the Central District of California, and some evidence is elsewhere." Id. at 17.

ACE argues that Weathersby's testimony "is critical to, perhaps dispositive of, the seminal coverage issue of when she was first injured" and that she cannot be compelled to appear in North Carolina, but she can be compelled to appear in California. (Document No. 27, p.7). In addition, ACE asserts that Crothall trained and supervised Weathersby in Los Angeles, where she was injured, and as such, all her supervisors, co-workers, treating physicians, and medical records are located in California.

The Court concludes that the Central District of California is the superior venue for purposes of ease of access to proof. Both potential witnesses and relevant documents are located in that district. This would include Ms. Weathersby, the key witness, and others who trained and supervised her, as well as documents associated with her employment at Cedars-Sinai, where she suffered the injury. This factor significantly favors transfer.

**4. Availability of Witnesses**

Plaintiff notes that the representatives of the parties are subject to compulsory process of this Court whether they are in North Carolina, Pennsylvania, Illinois or California. (Document No. 24, p.17). Plaintiff also contends that any non-party deponent is subject to process in the district where they reside, and that Plaintiff "has no problem relying on depositions to present trial testimony here if necessary." Id. at p.18. Plaintiff's flexibility in this matter is commendable; however, there is no indication that the other parties are as comfortable relying on deposition testimony to present trial testimony.

> The Court will not sacrifice convenience of non-party witnesses for that of the parties, all of whom have asserted claims or counterclaims in this case. See Gundle Lining Const. Corp. v. Fireman's Fund Ins. Co., 844 F.Supp. 1163, 1166 (S.D.Tex.1994) (granting a motion to transfer venue, holding that between parties and non-party witnesses, "[i]t is the convenience of non-party witnesses ... that is the more important factor and is accorded greater weight").

Diagnostic Devices, Inc. v. Taidoc Technology Corp., 3:08cv149-RJC-DCK, 2010 WL 2560316 at *4 (W.D.N.C. June 18, 2010).

As stated above, Ms. Weathersby, persons who trained and supervised her, her co-workers, and her medical providers are largely, if not entirely, in California. Some or all of these persons could be important witnesses in the case. Observing therefore that there may be several important non-party witnesses in California who cannot be compelled to attend in North Carolina, and few, if any, important witnesses in North Carolina who cannot be compelled to attend in California, this factor also significantly favors transfer.

**5. Possibility of a View**

It appears unlikely that a view will be sought by any party; however, if one is required, it would be in California and thus this factor favors transfer to that forum.

**6. Enforceability of Judgment, if Obtained**

Neither party has raised a legitimate concern that a judgment is more likely to be enforceable in one forum rather than the other. This factor is neutral.

**7. Relative Advantages and Obstacles to a Fair Trial**

No compelling arguments have been made that there are overwhelming advantages or obstacles to a fair trial in California or North Carolina. As noted above, the undersigned finds that access to witnesses and evidence is the significant advantage of the California forum and tilts the relative advantages and obstacles in favor of transfer.

**8. Other Practical Problems**

The undersigned does not find that practical problems have been identified that significantly favor either forum. It appears that many parties and witnesses will have to travel regardless of the forum.

**9. Administrative Difficulties Of Court Congestion**

Plaintiff contends its research reveals that the times from the filing of an action to its trial are comparable in the Central District of California and the Western District of North Carolina, but that the caseload of the California judges is almost double that of the North Carolina judges. (Document No. 24, p.20). Based on the information presented, this factor favors denial of the transfer, but only marginally.

**10. Interest in Localized Controversies Settled at Home**

This case relates to injuries sustained in California, but also involves the likely interpretation of insurance policies pursuant to North Carolina law. Under the circumstances, this factor is neutral and the Court attaches no weight to it.

**11. Avoidance of Unnecessary Problems with Conflicts of Laws**

Plaintiff contends that there is the potential for a conflict of laws dispute, if the case is transferred. (Document No. 24, p.22). Plaintiff also asserts, however, that even if this case were heard by California federal court, it would be required to apply the choice-of-law rules of North Carolina. Id. The undersigned is not persuaded that an unnecessary problem with conflicts of laws would be created by transfer, and thus finds this factor neutral.

Finally, Plaintiff argues that ACE unreasonably delayed in filing the pending motion to transfer. (Document No. 24, p.23). Plaintiff contends that it has been prejudiced by the delay and incurred legal expenses it would not have incurred had the motion been timely filed. Id. ACE makes three main points in reply: (1) there is no deadline to file a motion to transfer; (2) this case is in its infancy and no unnecessary or duplicate work has been performed here; and (3) Plaintiff has known from the outset of this matter that ACE contended venue was improper since ACE asserted in its Answer that venue was improper and the matter should be dismissed or transferred. (Document No. 27, p.8). The undersigned finds that any prejudice suffered by Plaintiff due to ACE's purported delay is minimal and not sufficient cause to deny transfer.

### III. CONCLUSION

Based on the foregoing, while the motion presents a relatively close question, the undersigned finds that transfer of this matter to the Central District of California is appropriate. Although many of the factors are either neutral or only give slight weight to one court over the other, the undersigned is particularly concerned that key witnesses are located in California that could not be compelled to appear in this forum.

**IT IS, THEREFORE, ORDERED** that "Defendant ACE American Insurance Company's Motion To Transfer Venue" (Document No. 19) is **GRANTED**.

Signed: December 3, 2010

David C. Keesler
United States Magistrate Judge